## The National-Dime Bank of Shamokin v. Cleveland Brothers Equipment Co., Inc.

*Lark, Makowski & Maratek* and *Rhoads, Sinon & Reader*, for plaintiff.

*William J. Madden*, for defendant.

KREIDER, J., October 13, 1959.—We have before us defendant's preliminary objections to plaintiff's complaint. Some of these were withdrawn and others were eliminated by certain amendments to the complaint. The remaining objections fall into three classes:

A. That the three "Security Agreements" in question are invalid because they are not signed by the secured party, although they are signed by the debtor.

B. That the complaint is vague and contradictory in that it describes in various ways the equipment in question.

C. That the allegations in paragraphs 10 and 11 of the complaint are scandalous, impertinent, immaterial and irrelevant.

### Statement of the Facts

Plaintiff's Complaint alleges that on or about April 17, 1958, defendant received as a trade-in from one Harry D. Reitz, a Used Caterpillar D-7 Tractor, Serial Number 4T1370, and a used "Unit" Model 614 Backhoe or shovel and gave him credit of $8,500 for the said items. It is further alleged that defendant later sold or otherwise disposed of the said equipment. Plaintiff claims to have security interests under the Uniform Commercial Code in the said equipment arising from: (1) A security agreement entered into between Harry D. Reitz and Mary A. Reitz, as debtors, and the Snyder County Trust Company of Selinsgrove, as creditor, on August 3, 1954; (2) a second security agreement between the same parties dated June 21, 1955; and (3) a security agreement dated November 29, 1957, between Harry D. Reitz, debtor, and plaintiff, The National-Dime Bank of Shamokin, as creditor. Plaintiff claims under the first two agreements by assignments dated October —, 1958.

Plaintiff contends that Harry D. Reitz had no authority to dispose of the tractor and backhoe or shovel without plaintiff's consent, and that defendant's action in accepting and later disposing of the equipment without satisfying plaintiff's liens thereon, constituted a conversion thereof so that defendant is now liable to plaintiff for the value of the equipment which is alleged to be $12,000.

### Discussion

Defendant contends plaintiff's liens are not valid for two reasons. It avers that the first and most com-

pelling reason is that none of the three security agreements relied on by plaintiff is signed by the secured party. However, each is signed by debtor, as above stated. It is alleged that plaintiff or its assignors attempted to perfect their liens under the provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 9-101 et seq., 12A PS §9-101, et seq. Defendant calls attention to section 9-402 thereof, entitled "Formal Requisites of Financing Statement," which provides:

"(1) A *financing statement* is sufficient if it is *signed by the debtor and the secured party*, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of property covered. When the collateral is crops growing or to be grown or goods affixed or to be affixed to realty so as to be a part thereof the statement must also contain a description of the land or realty concerned. A copy of *the security agreement* is sufficient as a financing statement if it contains the above information and is signed by both parties. When the collateral is goods affixed or to be affixed to realty, the collateral must be described by item and not by type." (Italics supplied.)

Defendant contends that the failure of the secured party to sign the security agreements is a fatal defect. Arcady Farms Milling Company v. Sedler, 367 Pa. 314 (1951), and Associated Lumber and Manufacturing Company, Inc. v. Mastroianni, 173 Pa. Superior Ct. 310 (1953), are relied upon in support of this proposition. The Arcady Farms case involved the Chattel Mortgage Act of June 1, 1945, P. L. 1358, which provides, inter alia, that a mortgage given pursuant to the terms of the act, "shall be in writing and signed, witnessed and duly acknowledged by the

mortgagor. . . ." It was held that a mortgage not witnessed created no lien. In the Associated Lumber Manufacturing case the court held that the failure to have verification placed on a notice of intention to file a mechanics' lien was a fatal defect which precluded plaintiff from asserting its lien.

Plaintiff asserts that its liens are valid and that defendant has failed to distinguish between the formal requisites of a *security agreement* as set forth in article IX of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 9-203(1)(*b*), 12A PS §9-203(1)(*b*), supra, and the formal requisites of a *financing statement* which is found in section 9-402 of the same act.

Section 9-203 of the Uniform Commercial Code, entitled "Enforceability of Security Interests; Formal Requisites," provides:

"(1) A security interest is not enforceable against the debtor or third parties unless . . .

"(b) the debtor has signed a security agreement which contains a description of the collateral . . ."

Plaintiff argues that section 9-402 of the Uniform Commercial Code, supra, entitled "Formal Requisites of Financing Statement," applies solely to the requisites of a financing statement and that it is only the *financing statement*, and not the security agreement, that must be signed by both the secured party and the debtor.* Copies of the security agreements are attached to the complaint and are signed by the debtor but not by the secured party.

---

* Plaintiff contends it was not necessary to attach to its complaint copies of the financing statements but asserts in its brief that a search of the records in the office of the Department of State and the office of the Prothonotary of Northumberland County will reveal that the financing statements were properly executed by *both* the debtor and the secured party. Defendant in its preliminary objections makes no attack upon the "financing statements."

We are of the opinion that a security agreement, as distinguished from a financing statement, is not invalid because it is signed only by the debtor and not by the creditor or lending party. We think this conclusion is supported by the wording of the Uniform Commercial Code which provides in section 9-203, as above stated, that "a security interest is not enforceable against the debtor or third parties unless (b) *the debtor has signed* a security agreement which contains a description of the collateral. . . ."

In the Uniform Commercial Code, Comment on section 9-203, 12A PS §9-203 Comment, it is stated:

"Purposes of Changes:

"1. Here as elsewhere in this Article, following the policy of the Uniform Trust Receipts Act, formal requisites are reduced to a minimum. The technical requirements of acknowledgment, accompanying affidavits, etc., common to much chattel mortgage legislation, are abandoned. The only requirements in cases not involving land are (a) a writing; (b) *the debtor's signature;* and (c) a description of the collateral or kinds of collateral . . ." (Italics supplied.)

And again in paragraph 4 of that Comment it is stated:

"4. The definition of 'security agreement' (Section 9-105) is 'an agreement which creates or provides for a security interest.' Under that definition *the requirement* of this Section *that the debtor sign* a security agreement is not intended to reject, and does not reject, the deeply rooted doctrine that a bill of sale although absolute in form may be shown to have been in fact given as security. . . ."

Moreover, in the special Commentary on the Uniform Commercial Code of Pennsylvaina by Robert Dechert and John J. Brennan, Esqs., 12A PS p. LXIV, those learned commentators state:

"The formal requirements for obtaining security are kept at minimum simplicity. Either possession of the collateral or *an agreement signed by the debtor* which describes the collateral and, where the collateral is crops or minerals, also describes any land that is affected, is required to make the security interest enforceable. The interest attaches to personal property in which the debtor 'has rights' when an agreement is made that it shall attach and when value is given.

"A generally applicable filing requirement is imposed but is streamlined by requiring a *'financing statement,'* as to which the requirements are only that it be *signed by the parties* and that it state mailing addresses and describe the types of property constituting the collateral and any land that may be affected. The underlying concept here is that a minimum indication on the public records that financing is being conducted is sufficient to give warning to anyone who may be concerned. Further specific information may be obtained by other persons through the debtor by use of the Article's device of obtaining from the secured party a confirmation of the status of the transaction. . . ."

For the foregoing reasons defendant's preliminary objections 8, 9 and 10 to the effect that the security agreements in question are invalid because they are not signed by the creditor or secured party, must be overruled.

Defendant's second preliminary objection relates to the alleged insufficient description of a certain "Unit" Model 614 Backhoe or shovel. Defendant contends that the description of this particular item is not only insufficient but definitely misleading. This piece of machinery is an item which is included in other equipment described in the security agreements and financing statement. It is variously described as follows: "5/8 yd. Shovel, Deisle Unit, Booms, Drag

Buckets," "1951 Unit, 1/2 yd. Deisle Shovel, Model 614, Ser. 51636," "1—Unit Model 614 Diesel Basic Machine with five operating clutches & power dipper trip, and dragline, Serial #61536."

Plaintiff, in support of its contention that the description of the item in question is sufficient, cites article IX of the Uniform Commercial Code of April 6, 1953, P. L. 3, supra, sec. 9-110, 12A PS §9-110, which provides as follows:

"For the purposes of this Article any description is sufficient whether or not it is specific if it reasonably identifies the thing described."

The Uniform Commercial Code Comment on the above quoted section states:

"Purposes:

"The requirement of description of collateral (see Section 9-203 and Comment thereto) is evidentiary. The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test."

In Barnesboro Finance Company v. Thompson, 85 D. & C. 522 (1949), Judge Williams held that a recorded chattel mortgage which erroneously described a tractor as an International Tractor TD 40 TCB 5473 whereas it was in fact an International Tractor TD 40 TCC 5473, was not such a misdescription as to invalidate the mortgage, where the mortgage also gave the name and place of residence of the mortgagor and the location of the mortgaged property. The Lycoming County Court cited Twin City Motor Co. v. Rouzer Motor Co., 197 N. C. 371, 148 S. E. 461 (1929), and Huber v. Cloud, 102 N. J. 181, 130 Atl. 562 (1925). In

the Twin City Motor Co. case a motor vehicle was sold on a recorded conditional sales agreement describing said vehicle as "one S.H. Coupe, No. —, Model T." The words "S.H." were later proved to mean "Second Hand." The purchaser took the car to another dealer and had a new motor installed and in payment therefor gave a chattel mortgage. The Supreme Court of North Carolina held that the description was sufficient to give notice, stating:

" 'While it cannot be expected that a mortgage should set forth a description of the property conveyed with such certainty that it may be identified by the terms of the instrument alone, and without the aid of evidence aliunde to fit the description to the thing, still it is necessary that it should furnish some description of the property accompanied with such certainty as will enable third parties, aided by inquiries which the deed itself suggests, to identify it' ": page 373.

In the Huber case a replevin action was brought to recover a motor vehicle. Plaintiff in the replevin action had sold the motor vehicle in question under a conditional sales agreement in which the motor number was given as 91183. The actual motor number was 71103. The lower court found for defendant but upon appeal the New Jersey Court of Errors and Appeals reversed, holding:

"We think, therefore, that such description as will reasonably identify the chattel is sufficient. But here the descriptions in the conditional bills of sale were more specific and particular than that required by the Automobile Sales act, the difficulty being that it is claimed by the plaintiff-appellant that through error and mistake the motor number is erroneous. He was entitled to show, if he could, that this was so, and that the motor vehicle described therein was the identical car which was the subject of the action of replevin": page 183.

It is true that in the Barnesboro case the description related to a chattel mortgage but we think that the rationale of that decision is applicable to the case at bar. We think the description of the Backhoe or shovel in the instant case "reasonably identifies the thing described" (section 9-110 of the Uniform Commercial Code, 12A PS §9-110, supra), and that this item was sufficiently described to identify it without the aid of the serial number. We believe that defendant was put on notice that the equipment belonging to Harry D. Reitz was subject to security interests. It had notice of the parties who held the security interests and it was under a duty to inquire as to whether or not the equipment with which it was dealing was subject to such a security interest. See 65 A. L. R. 719. Therefore, preliminary objection no. 2 cannot be sustained.

Defendant's remaining preliminary objections nos. 3 and 4 are to the effect that the complaint in paragraphs 10 and 11 contains "scandalous, impertinent, irrelevant and immaterial matter" in violation of Pa. R. C. P. 1017(b) (2). These paragraphs aver:

"10. That at the time defendant received and accepted from Harry D. Reitz the used Caterpillar D 7 Tractor and the used 'Unit' Model 614 Backhoe, aforesaid, it sold to the said Harry D. Reitz a used Caterpillar Model D 8 Tractor, for the sum of $13,500.00.

"11. That on or about September 26, 1958, the defendant repossessed from Harry D. Reitz the said used Caterpillar Model D 8 Tractor sold to him on or about April 17, 1958, which action resulted in an unjust enrichment to Cleveland Brothers Equipment Company, Inc., defendant, to the extent of the value of the used Caterpillar D 7 Tractor and the used 'Unit' Model 614 Backhoe above-mentioned."

Plaintiff argues that it is necessary for it, "in order to carry through the continuity of this transaction, to plead how the defendant became involved with the

said Harry D. Reitz and how the defendant came into possession of the equipment which plaintiff alleges defendant has converted to its own use." Plaintiff further contends that it is proper for it to plead all of the actions of defendant arising out of the transactions between it and Harry D. Reitz, which transactions were detrimental to the interests of plaintiff and which form the background, detail and substance of this case. Defendant, on the other hand, asserts that plaintiff had no part in the transactions set forth in paragraphs 10 and 11 of the complaint, that plaintiff makes no claim that it was injured or prejudiced thereby and that there is no justification for the inclusion of these paragraphs in the complaint.

The controlling issue in this case is whether the security agreements are fatally defective because they are not signed by the secured party or because of the alleged insufficiency of the description of one of the items involved in the transaction. Having determined that the security agreements are valid, we are unable to perceive at this time the relevancy of the allegations in paragraphs 10 and 11 of the complaint. The fact that the debtor Reitz may have subsequently defaulted on the purchase agreement he made with defendant Cleveland Brothers Equipment Co., Inc., involving a piece of machinery which is not included in the security agreements before us, viz., a Caterpillar Model D 8 Tractor, and that the latter was repossessed thereafter by defendant, does not appear to be within the scope of the instant proceeding. Consequently, defendant's preliminary objections nos. 3 and 4 should be sustained.

And now, October 13, 1959, defendant's preliminary objections nos. 3 and 4 are sustained and paragraphs 10 and 11 of the complaint are stricken from the record; preliminary objections 2, 8, 9 and 10 are overruled and defendant is directed to file a responsive

answer to the complaint within 20 days from this date.